UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---

NATIONWIDE LIFE INSURANCE COMPANY,

    Plaintiff,

v.

MANFRED STEINER and SHEILA STEINER,

    Defendants.

C.A. No. 09-235 S

---

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

On July 13, 2010, the Court held in this diversity action that Plaintiff Nationwide Life Insurance Company ("Nationwide") had breached its annuity contract with Defendants Manfred and Sheila Steiner (collectively, the "Steiners"). The parties have stipulated to damages, and now the single question remaining before the Court is the amount of prejudgment interest due to the Steiners.

I. Background[1]

The Steiners applied to purchase an annuity from Nationwide on March 18, 2008, listing Manfred Steiner as the annuity

---

[1] The background provided herein is limited to those facts necessary to decide the issue presently before the Court. For additional factual background, see Nationwide Life Ins. Co. v. Steiner, C.A. No. 09-235 S, 2010 WL 2766667, at *1-2 (D.R.I. July 13, 2010).

contract owner, Sheila Steiner as the beneficiary to the annuity contract, and an individual named Sheryl Stroup ("Stroup") as the annuitant. On March 20, 2008, Nationwide accepted the Steiners' application, and issued an annuity contract (the "Contract"). The Steiners paid an initial premium of $1,000,000. (See Compl. Ex. A (hereinafter "Contract").) Stroup, the annuitant, passed away on April 29, 2008, and almost a year later, on March 19, 2009, the Steiners submitted a claim to collect the death benefit provided for by the Contract (the "Death Benefit").[2] The Death Benefit, at the time of the redemption request, was valued at $1,059,685.48. (See Pl.'s Ans. to Def.'s Counterclaim ¶ 17.) Nationwide was required under the Contract to pay the Death Benefit within thirty days of its receipt of a redemption request. (See Contract at 17.)

Nationwide thereafter became aware that Stroup had been terminally ill when the Steiners purchased the Contract, and that Nationwide had sold to another person a second annuity naming Stroup as the annuitant. As a result of its discovery, rather than remitting the Death Benefit to Sheila Steiner, on April 14, 2009, Nationwide sent a letter to Manfred Steiner enclosing a check payable to him for $481,418.15, the surrender

---

[2] The Death Benefit was a feature of the Contract that, in this case, required Nationwide to pay the highest contract value achieved during the term of the Contract to the beneficiary.

2

value of the Contract (the "Surrender Value Check"). The letter stated the following:

> Dr. Steiner,
>
> After reviewing the death claim request submitted for the above annuity contract, Nationwide Life Insurance Company ("Nationwide") has determined that multiple annuity contracts were issued on the life of Sheryl Stroup, the annuitant of the above contract, in contravention of contract provisions regarding Nationwide's assumption of risk.
>
> <u>The above contract has therefore been rescinded and we are returning to you the Surrender Value pursuant to the contract's terms.</u> Please refer to your annuity contract for further information. <u>Please also note that Nationwide reserves all other grounds for rescission and all other rights and remedies that are or may be available to it in respect of the initial issuance and the rescission of the above contract.</u>
>
> Enclosed please find a check for the Surrender Value of the contract.
>
> NATIONWIDE LIFE INSURANCE COMPANY

(Compl., Ex. A Letter from Nationwide to Manfred Steiner (Apr. 14, 2009) (emphasis added).) The Steiners apparently never cashed the Surrender Value Check.

In response, on May 7, 2009, the Steiners notified Nationwide by letter that they believed Nationwide had no basis for rescission, and therefore, Nationwide was in breach of the Contract. The Steiners demanded full payment of the Death Benefit plus accrued interest, made payable to Sheila Steiner. Notably, the letter did not say that Manfred Steiner would not cash the check. Thereafter, Nationwide brought an action in

3

this Court seeking a declaratory judgment, and the Steiners counterclaimed for, among other things, breach of contract. The Court granted the Steiners' breach of contract counterclaim, and denied all other claims and counterclaims. See Nationwide Life Ins. Co. v. Steiner, C.A. No. 09-235 S, 2010 WL 2766667, at *8 (D.R.I. July 13, 2010).

In its Opinion and Order, the Court gave the parties thirty days to stipulate to damages or request additional Court intervention. Id. Although the parties were able to stipulate to damages, namely, that the Death Benefit amounted to $1,059,685.48, there was no resolution regarding the Steiners' prejudgment interest award. (Letter from Nationwide to the Hon. William E. Smith (Oct. 1, 2010) at 1 (hereinafter "Oct. 1, 2010 letter").)

II. Discussion

In a diversity action, "state law must be applied in determining whether and how much pre-judgment interest should be awarded." Buckley v. Brown Plastics Mach., LLC, 368 F. Supp. 2d 167, 169 (D.R.I. 2005) (quoting Fratus v. Republic W. Ins. Co., 147 F.3d 25, 30 (1st Cir. 1998)). The applicable statute here is R.I. Gen. Laws § 9-21-10, which provides for prejudgment interest on pecuniary damages awarded in civil actions "from the

date the cause of action accrued," to be "included in the judgment entered".[3]

In the instant case, Nationwide and the Steiners dispute three components of the prejudgment interest calculation: (1) the date on which prejudgment interest began accruing; (2) the date on which prejudgment interest stopped accruing; and (3) the amount on which the prejudgment interest should be calculated.

A. The Date Prejudgment Interest Began Accruing

Nationwide argues that the prejudgment interest began accruing on April 19, 2009, the date the Death Benefit was due to Sheila Steiner. The Steiners counter that prejudgment interest began accruing on April 14, 2009, because the action itself accrued when Nationwide refused Sheila Steiner's redemption request, attempted to rescind the Contract, and transmitted the Surrender Value Check. In the Steiners' May 7, 2009 letter to Nationwide, however, the Steiners took a different stance and stated that they were due interest "from April 19, 2009 to the date of payment." (Letter from R. Daniel

---

[3] R.I. Gen. Laws § 9-21-10(a) states in relevant part:

> In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein.

5

Prentiss, Counsel for the Steiners, to Nationwide (May 7, 2009) at 2, ECF No. 26-1.)

In general, prejudgment interest provided for by Section 9-21-10 "begins to run when the action accrues for purposes of the statute of limitations." Metro. Prop. & Cas. Ins. Co. v. Barry, 892 A.2d 915, 924 n.5 (R.I. 2006) (citing Castrignano v. E.R. Squibb & Sons, Inc., 900 F.2d 455 (1st Cir. 1990)). Stated another way, it begins to accrue when the prevailing party "was entitled to his money, and did not receive it." Gupta v. Customerlinx Corp., 385 F. Supp. 2d 157, 167 (D.R.I. 2005). C.f. Buckley, 368 F. Supp. 2d at 172 (holding that prejudgment interest accrued from the date the action was filed because the Court could not "accurately determine . . . the precise moment Plaintiff was originally entitled to the[] funds," but noting that it may have been appropriate to determine that interest accrued from the date the damages began to accrue, if that date had been ascertainable).

In this case, prejudgment interest began to accrue on April 19, 2009, the date the Death Benefit was due to Sheila Steiner. See Corning Glass Works v. Seaboard Sur. Co., 112 R.I. 241, 250, 308 A.2d 813, 818 (R.I. 1973) (noting that, generally, prejudgment "interest in a suit on an insurance policy commences to run from the time when the loss is made payable by the terms

of a policy"). Therefore, Nationwide is liable for prejudgment interest beginning on April 19, 2009.

B. The Date Prejudgment Interest Stopped Accruing

Ironically, Nationwide believes that the accrual of prejudgment interest should cease <u>later</u> than the Steiners suggest. Nationwide contends that prejudgment interest stopped accruing on August 12, 2010, the date it says it indicated that "it was ready, willing, and able to pay the full amount of the death benefit, together with prejudgment interest calculated on the $578,627 [sic] portion of that amount that it had not previously tendered." (Oct. 1, 2010 letter at 2.) The Steiners, on the other hand, assert that prejudgment interest should be calculated through July 13, 2010, the date of the Court's Opinion and Order finding Nationwide in breach of the Contract.

Nationwide's claim that prejudgment interest stopped accruing with its August 12, 2010 letter is without merit. In pertinent part, the letter stated the following:

> Although the parties agree that the death benefit totals $1,059,685.48, they disagree on the subject of prejudgment interest. The Steiners appear to contend that they are entitled to prejudgment interest on the entire $1,059,685.48 from April 19, 2009 forward, a position with which Nationwide disagrees because Nationwide tendered to the Steiners a check in the amount of $481,418.15 on April 14, 2009.

7

(Oct. 1, 2010 letter Ex. B at 1.)  The Court has difficulty reading this letter as a statement that Nationwide was "ready, willing, and able to pay the full amount of the death benefit, together with prejudgment interest calculated on the $578,627 [sic] portion of that amount . . . ."  The letter merely asserts Nationwide's legal position, and makes no such offer of tender. There is also no suggestion that Nationwide had deposited the sum into the court registry or had attempted to tender the amount to Sheila Steiner.  Therefore, the accrual of prejudgment interest was unaffected by this letter.

The Steiners' position, on the other hand, while logical, does not comport with the applicable statute.  Under R.I. Gen. Laws § 9-21-10, prejudgment interest accrues until final judgment.  See Catanzaro v. Cent. Congregational Church, 723 A.2d 774, 777 (R.I. 1999) (holding that the plaintiffs' prejudgment interest accrued "until the date of final judgment"); see also Welsh Mfg., Div. of Textron, Inc. v. Pinkerton's, Inc., 494 A.2d 897, 898 (R.I. 1985) (holding that "the term 'judgment' referred to in [R.I. Gen. Laws] § 9-21-10 contemplates a final judgment").

In the Court's July 13, 2010 Opinion and Order, it stated that "Judgment shall issue after damages are determined." Steiner, 2010 WL 2766667, at *8.  Therefore, prejudgment

8

interest will accrue until judgment enters; this shall occur contemporaneous with this order.

        C.    The Sum on Which Prejudgment Interest Should be Calculated

In regards to the final issue in dispute, Nationwide asserts that prejudgment interest should be calculated on $578,267.33, the difference between the Death Benefit of $1,059,685.48 due under the Contract and the Surrender Value Check of $481,418.15.[4] Nationwide contends that the Surrender Value Check tolled prejudgment interest on $481,418.15 because the check was an "absolute and unconditional" tender. To support this characterization, Nationwide notes that the April 14, 2009 letter did not indicate that the Steiners' rights would be affected by cashing the Surrender Value Check and that it was never returned to Nationwide. (See Oct. 1, 2010 letter at 1-2.)

The Steiners disagree. They contend that prejudgment interest should be calculated on the full amount of the Death Benefit because the Surrender Value Check was not an absolute and unconditional tender. The Steiners also assert that in their May 7, 2009 letter, they informed Nationwide that they turned down its offer to discharge Nationwide of its contractual obligation.

---

[4] To be precise, Nationwide states in its letter that it owes prejudgment interest on $578,267, but its calculation works out to $578,267.33. (See Oct. 1, 2010 letter at 2.)

Prejudgment interest "will not accrue after a valid tender." Bogosian v. Woloohojian, 158 F.3d 1, 9 (1st Cir. 1998). The Rhode Island Supreme Court has held that tender "envisions the insurer offering to pay the entire amount found to be due under the policy. If the tender falls short of that sum, interest runs on the whole." Corning Glass Works, 112 R.I. at 251, 308 A.2d at 819.

In Bogosian, the First Circuit considered the effect of three partial payments, made under different circumstances, on the tolling of prejudgment interest. Bogosian, 158 F.3d at 9-10. One of the payments was made into the court registry, and the Court held that that was sufficient to toll prejudgment interest on that amount. Id. at 9. In so holding, the Court noted that the payor had relinquished control of the money and, once the money was withdrawn from the court registry, the prevailing party would receive any interest that had accrued during the deposit period. Id. A second partial payment considered in Bogosian was made in the form of checks that were sent to the prevailing party, but never cashed. Id. at 10. The prevailing party indicated to the payor that she did not want to accept the checks, but she never returned the checks, nor did she inform the payor that she would not cash them. Id. The First Circuit concluded that interest was tolled for the period of time during which the checks could have been cashed by the

prevailing party, and remanded the case to the District Court to determine whether further interest abatement was warranted. Id.

On remand, the District Court held that interest abatement was not warranted for any additional period of time. Bogosian v. Woloohojian, 93 F. Supp. 2d 145, 157 (D.R.I. 2000). The District Court did note, however, that "interest abatement for the time period during which the checks could have been cashed is sufficient to penalize plaintiff for her 'bad strategy' of refusing to cash the checks." Id.[5]

The question here then, is whether Sheila Steiner had sufficient control over the Surrender Value Check and was employing "bad strategy" by not cashing it, or if Nationwide maintained control of the money throughout. Because the money was never deposited in the court registry, the check was made out to Manfred Steiner rather than Sheila Steiner, and the check was enclosed with a letter potentially affecting the Steiners' rights, the Court holds without difficulty that Nationwide did

---

[5] Although the First Circuit's consideration of partial payments in Bogosian may, at first glance, appear to be at odds with the statement in Corning Glass Works that "[i]f the tender falls short of that sum, interest runs on the whole," Corning Glass Works v. Seaboard Sur. Co., 112 R.I. 241, 251, 308 A.2d 813, 819 (R.I. 1973), this Court reads Bogosian as carving out a limited, fact-specific, and practical exception to this general rule. Even if there is some arguable discrepancy between the opinions, it does not matter here. Nationwide's alleged partial payment fails under both the broad rule announced by Corning Glass Works, and the exception carved out in Bogosian.

not make an absolute and unconditional tender to Sheila Steiner sufficient to toll prejudgment interest.

First, there is no evidence that Nationwide attempted to place the surrender value in the court registry. Thus, it did not lose control of the money, and there is little to suggest that it was attempting to make a good faith partial payment to Sheila Steiner.

Second, if the payment was intended to be considered a partial payment for the Death Benefit, Nationwide remitted the sum to the wrong person. The Death Benefit was due to Sheila Steiner, the beneficiary, not to Manfred Steiner, the owner of the Contract. To date, there is no indication that Nationwide has attempted to remit any money to Sheila Steiner, as required by the Contract. This fact is significant because it undermines Nationwide's argument that there was any partial payment at all; it reveals the true context in which the Surrender Value Check was sent to Manfred Steiner, as discussed next.

Third, the Surrender Value Check cannot fairly be characterized as an "absolute and unconditional" tender. (Oct. 1, 2010 letter at 2.) Rather, Nationwide's offer to remit the value of the Surrender Value Check to the Steiners represents an attempt to discharge its obligation under the Contract and to rescind the Contract.

In Rhode Island, both mutual rescission and accord and satisfaction are factual determinations that require a finding of mutual intent. See Weaver v. Am. Power Conversion Corp., 863 A.2d 193, 198 (R.I. 2004) (noting that to prove an accord and satisfaction, "[t]here must be accompanying expressions sufficient to make the creditor understand . . . that the performance is offered to him as full satisfaction of his claim and not otherwise") (emphasis deleted) (quoting 6 Corbin on Contracts, § 1277 at 118 (1962)); Klanian v. N.Y. Life Ins. Co., 68 R.I. 126, 136, 26 A.2d 608, 613 (R.I. 1942) ("Mutual rescission rests upon intention; it depends both upon the acts of the parties and the intention with which those acts are done."). If Manfred Steiner had cashed the Surrender Value Check, the Steiners may very well have been exposed to a claim by Nationwide that endorsement evinced Manfred Steiner's intent to mutually rescind the Contract or that accord and satisfaction had occurred. Put another way, there was no unconditional and absolute tender here because if Manfred Steiner had cashed the check, he would have been inviting Nationwide's claims of mutual rescission and accord and satisfaction. Therefore, for all of these reasons, prejudgment interest must be calculated on the full amount of the Death Benefit.

III. Conclusion

For the reasons stated herein, the Court orders Nationwide to pay prejudgment interest of 12 percent per annum, as set forth in R.I. Gen. Laws § 9-21-10(a), on the total amount of the Death Benefit, $1,059,685.48, from April 19, 2009 until judgment enters.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: December 29, 2010